UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBY DIZON,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF SOUTH SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 18-cv-03733-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 11 |

Before the Court is Defendants' motion to dismiss Plaintiff's Section 1983 *Monell* claims. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Plaintiff Debby Dizon brings claims under 42 U.S.C. § 1983 and state law based on allegations that Defendants illegally detained, searched, and arrested her during a traffic stop in Daly City, California. For the purposes of deciding this motion, the Court accepts as true the following factual allegations from Plaintiff's Complaint. ECF No. 1 ("Compl.").

Plaintiff Dizon is a resident of Daly City, California. *Id*. ¶ 15. The defendants are the City of South San Francisco ("the City"), Diana Quintero, Christopher Devan, and Does 1-10. *Id*. ¶¶ 16-20. Officer Quintero and Officer Devan are police officers for the City. *Id*. ¶¶ 17-18.

After midnight on December 22, 2016, Officer Devan stopped Dizon's vehicle at a residential intersection in Daly City because the vehicle had a suspended registration. *Id*. ¶¶ 27-28. After questioning Dizon about her insurance and hearing back from dispatch that Dizon had no record or warrants, Officer Devan summoned Officer Quintero to serve as backup for a search. *Id*. ¶¶ 28, 30. After Devan waited for three minutes, Quintero arrived. *Id*. ¶¶ 30-31. Devan then asked Dizon to step out of her vehicle and asked her a series of questions unrelated to the traffic

stop. *Id*. Plaintiff agreed to be searched, and Devan instructed Quintero to search Dizon's body over her clothes. *Id*. ¶¶ 31-32.

While conducting the pat down, Officer Quintero felt something hard in Dizon's vaginal area, which Dizon claimed was a tampon. *Id*. ¶ 32. Quintero told Dizon to be honest and asked if she had drugs, to which Dizon "shook her head in the affirmative." *Id*. Officer Devan told Dizon that she would be handcuffed, and Quintero asked Dizon if "it was 'okay if I grab it?'" *Id.* ¶ 33. Dizon, handcuffed and crying, "allegedly gave consent" and Officer Quintero "made contact with [Dizon's] vagina and labia to retrieve the item." *Id*. ¶¶ 31-34. Quintero did not take sanitary or privacy precautions despite Devan's presence and the fact that the search was conducted in a public area. *Id*. ¶¶ 35-36. Quintero removed a baggie of crystalline shards from Dizon's labia. *Id*. ¶ 36.

Dizon was arrested and charged with possession of drugs. *Id*. ¶ 37. After an evidentiary hearing, the criminal court ruled that the officers' detention and search of Dizon were unlawful. *Id*. ¶ 38. The criminal case against her was then dismissed by the San Mateo County District Attorney's Office. *Id*. ¶ 39. Officers Devan and Quintero have not been disciplined or terminated for their treatment of Dizon. *Id*. Since the incident, both officers have received pay raises and Officer Devan has been promoted. *Id*.

Dizon filed her complaint with this Court on June 22, 2018. Compl. She brings six causes of action: (1) a violation of the Fourth Amendment by unlawful detention under Section 1983; (2) a violation of the Fourth Amendment by an unlawful body cavity search under Section 1983; (3) a *Monell* claim for failure to train under Section 1983; (4) a *Monell* claim for ratification under Section 1983; (5) a claim for battery under California Government Code Sections 815.2(a) and 820(a); and (6) a claim for intentional infliction of emotional distress under California law. *Id*.

On July 17, 2018, Defendants filed the motion to dismiss now before the Court. ECF No. 11. Dizon filed her opposition to the motion on July 30, 2018. ECF No. 12. Defendants replied on August 7, 2018. ECF No. 14.

**II. JURISDICTION**

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remainder of Plaintiff's claims pursuant to 28

2

U.S.C. § 1367(a).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Unless amendment would be futile, a district court should freely grant leave to amend the complaint. Fed. R. Civ. P. 15(a)(2); *see also Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1161 (E.D. Cal. 2010) ("If a Rule 12(b)(6) motion to dismiss is granted, '[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that pleading could not possibly be cured by the allegation of other facts.'" (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc))).

## IV. REQUEST FOR JUDICIAL NOTICE

Per Dizon's request, the Court takes judicial notice of the 2013 U.S. Bureau of Justice Statistics report regarding traffic stops and searches because it is a matter of public record not subject to reasonable dispute. ECF No. 12 at 12 n.1; Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

3

**V.     DISCUSSION**

The present motion to dismiss addresses Dizon's third and fourth causes of action, which allege municipal liability against the City and Does 1-10 for the City's failure to train its officers and its ratification of their conduct. ECF No. 11 at 5-11. Defendants argue that Dizon's complaint fails to allege sufficient facts to state a *Monell* liability claim under either theory. *Id*.

Under *Monell*, a government entity may not be held liable under Section 1983 unless a "policy or custom" of the entity can be shown to be a moving force behind the alleged constitutional violation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

> In order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). Generally, a plaintiff may rest her *Monell* claim on one of three bases. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting *Monell*, 436 U.S. at 708), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Second, under certain circumstances, a local government may be held liable under Section 1983 for acts of "omission," including failures to train its employees, "when such omissions amount to the local government's own official policy." *Id.* "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992)).

**A.     Failure to Train**

Failure to train government employees may constitute a sufficient policy under *Monell* if the failure constitutes "deliberate indifference" or otherwise "reflects a deliberate or conscious

4

choice" by the government entity. *City of Canton v. Harris*, 489 U.S. 378, 389-93 (1989) (internal quotation marks omitted). When a failure to supervise is "sufficiently inadequate," it may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision does not give rise to a *Monell* claim; rather, the need to train must be "obvious." *Dougherty*, 654 F.3d at 900.

Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted). Judged against this standard, Dizon's complaint is deficient. Her complaint does not allege any other constitutional violations apart from the one she claims to have suffered. *See* Compl. ¶ 58.

In her opposition, Dizon does argue that the existence of a city protocol for extending traffic stops and performing body cavity searches can be inferred from the "systematic and open manner" in which the officers carried out and reported their unreasonable search. ECF No. 12 at 14, 17. Plaintiff's argument is based on Officer Devan's testimony at the state court motion to suppress hearing that checking a passenger's identification and background is "standard practice" and "protocol." *Id.* These facts are not contained in the complaint, so the Court cannot consider them on this motion. Moreover, even if the allegations were properly before the Court, they would not assist Dizon. Devan's testimony regarding "standard practice" was made in response to questions about a portion of the stop entirely apart from the body cavity search: Devan asking Dizon's passenger to provide identification. *Id.* at 24-25. Dizon points to no evidence that would indicate that Devan's other actions during the traffic stop conformed to some type of "protocol." *Id.*

There is an exception to the general rule, however: "in a narrow range of circumstances," a pattern of similar violations may not be necessary where violations of constitutional rights are the "highly predictable consequence" of a failure to train. *Connick*, 563 U.S. at 63. In *City of Canton*, the Supreme Court offered as an example the hypothetical failure of a city to train officers on the constitutional limitations on the use of deadly force. 489 U.S. at 390 n.10. "[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing

5

felons" – indeed, the city "has armed its officers with firearms, in part to allow them to accomplish this task." *Id*. Thus, the need to train officers on limitations on the use of deadly force "can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights," even without evidence of a pattern of multiple violations. *Id.* (internal quotation marks omitted).

Courts have extended this exception to situations similar to the one at bar. For example, in *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724 (6th Cir. 2015), plaintiff's son was booked into county jail, and died three days thereafter from a staph infection. *Id.* at 728-29. Plaintiff alleged that the nurses working at the jail were not properly trained, and that the failure to train or supervise had contributed to her son's death. The Sixth Circuit found the need to train jail nurses to be obvious, because the consequences of that failure were so predictable:

> LPN nurses complete a level of medical training, they obtain a Kentucky license, and they arrive on the job with a limited set of medical skills. . . . Shadrick's expert witness established that LPN nurses lack any authority to diagnose medical conditions, yet the nurses are routinely confronted with frequent and competing demands for medical care arising from the needs of numerous inmates suffering from maladies of varying severity. It is predictable that placing an LPN nurse lacking the specific tools to handle the situations she will inevitably confront in the jail setting will lead to violation of the constitutional rights of inmates. A reasonable jury, therefore, could determine that SHP's failure to train and supervise its LPN nurses in meeting their constitutional obligations demonstrates SHP's own deliberate indifference to the highly predictable consequence that an LPN nurse will commit a constitutional violation.

*Id.* at 740.

In *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4 (1st Cir. 2005), Providence police officers shot and killed an off-duty police officer who was attempting to respond to the same incident under a city policy (the "always armed/always on-duty" policy) that required him to act despite being off-duty and out of uniform, because officers mistakenly perceived him as a threat. *Id.* at 9. The Third Circuit reversed a grant of summary judgment on plaintiff's failure to train claim, finding that even though there was no evidence of prior constitutional violations, there was "some evidence from which a jury could find that it was common knowledge within the PPD

6

that misidentifications of off-duty officers responding to an incident often occurred in Providence, particularly misidentification of minority officers." *Id.* at 28. The court held that under the circumstances, "it is clear that a jury could find a pattern of knowledge of prior misidentifications and that this was likely to pose a significant risk of harm." *Id.*

Similar reasoning applies here. Law enforcement officers know that the concealment by suspects of narcotics and other materials will sometimes require the use of body cavity searches. By their nature, such searches are intrusive and potentially embarrassing. In this case, for example, Plaintiff alleges that officers removed an object from her vagina while she was standing on the side of a public road. Plaintiff asserts that the officers' search violated California Penal Code § 4030, and that the City failed to train its officers in the requirements of that section.[1] In enacting that statute, the California legislature found that "law enforcement policies and practices for conducting strip or body cavity searches of detained persons vary widely throughout California" and that as a result, "some people have been arbitrarily subjected to unnecessary strip and body cavity searches after arrests for minor misdemeanor and infraction offenses" and that "some present search practices violate state and federal constitutional rights to privacy and freedom from unreasonable searches and seizures." Cal. Pen. Code § 4030(a). The Court concludes that Plaintiff has adequately alleged that the City's failure to train its officers in the conduct of body cavity searches demonstrates the City's deliberate indifference to the highly predictable consequence that an officer will commit a constitutional violation.

---

[1] "Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately. Specifically, the CITY failed to adequately train its officers with regard to their obligations under California Penal Code section 4030 and the Fourth and Fourteenth Amendments to the United States Constitution, the permissible scope and duration of traffic stops, the protocol and requirements to conduct a body cavity search and the duty to refrain from unreasonable and illegal searches." Compl. ¶ 58; *see also* ECF No. 12 at 10-11.

By its terms, section 4030 applies only to pre-trial detainees who are arrested for misdemeanors or infractions. Cal. Pen. Code § 4030; *see also Jaegel v. Cty. of Alameda*, No. C 09-00242 CW, 2010 WL 334862, at *4 (N.D. Cal. Jan. 22, 2010) ("§ 4030(f) does not apply to detainees arrested for felony offenses"). The complaint alleges that Dizon was "arrested for possession of drugs," but does not state whether she was arrested for a felony or a misdemeanor. Thus, it is possible that Plaintiff was not subject to the terms of section 4030. The Court need not decide that issue now.

7

Defendants' motion to dismiss Dizon's third cause of action, alleging *Monell* liability under a failure to train theory, is denied.

**B. Ratification**

A *Monell* claim under a theory of ratification exists when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346-47. "[R]atification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). However, "[a] policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. . . . [I]t is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* Instead, there must be "evidence of a conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Finally, to show that ratification was a "moving force" behind the constitutional deprivation, a plaintiff must demonstrate both causation in fact and proximate causation. *Dougherty*, 654 F.3d at 900; *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Dizon's complaint fails to identify "an official with final policy-making authority" sufficient for a *Monell* claim. *See Gillette*, 979 F.2d at 1346. The complaint states merely that "Defendants City of South San Francisco and DOES 1-10 ratified the conduct" and that "a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendant QUINTERO and Defendant DEVAN, ratified (or will ratify) [their] acts and the bases for them." Compl. ¶¶ 39, 65. First, the City is an organizational entity, not "an official" sufficient for a ratification claim. *Schulthies v. Nat'l Passenger R.R. Corp.*, 650 F. Supp. 2d 994, 1001 (N.D. Cal. 2009) ("[T]he third *Monell* avenue applies to an 'official,' not to the organizational entity."). Does 1-10 also are insufficient for a ratification claim because Dizon does not explain how any of these individuals exercised "final policy-making authority."

Dizon's opposition requests that the Court take judicial notice of the fact that the Chief of Police for the City of South San Francisco is Jeff Azzopardi and argues that Azzopardi was an official policymaker for the City at the time of the incident. ECF No. 12 at 18 (citing *Larez v. City*

8

*of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). However, even if the Court were to take judicial notice of Azzopardi's position, the *complaint* still fails to allege that Azzopardi ratified Quintero and Devan's conduct. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

The complaint is also deficient in that it fails to allege approval of the officers' actions. "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). The complaint alleges that the City and Does 1-10 had "full knowledge of the nature and extent of [Quintero and Devan's] conduct and the [criminal court] judge's rulings." Compl. ¶ 39. It further alleges that "[n]either Defendant Devan nor Defendant Quintero has been disciplined or terminated for their unlawful conduct. Instead, both officers have received significant pay raises and Officer Devan has been promoted." *Id.* Failure to discipline alone is insufficient to state a claim under a ratification theory. *Canas v. City of Sunnyvale*, No. C 08-5771 JF PSG, 2011 WL 1743910, at \*7 (N.D. Cal. Jan. 19, 2011). Nor is it sufficient that officers may have been promoted after the fact. *See Bennett v. Cty. of Shasta*, 2:15-cv-01764-MCE-CMK, 2017 WL 3394128, at \*4 (E.D. Cal. Aug. 8, 2017) (dismissing *Monell* ratification claim because "Plaintiff points to no authority standing for the proposition that the promotion of an officer alone constitutes ratification of that officer's conduct absent some facts from which it can be inferred that the entity's final policymaker actually had knowledge of and approved the purportedly unconstitutional conduct"); *Moua v. McAbee*, 1:06-cv-00216 OWW SMS, 2007 WL 3492157, at \*13 (E.D. Cal. Nov. 14, 2007) (granting summary judgment for defendant on Monell ratification claim because "Plaintiff has not submitted any evidence that any command level policymaker promoted Officer Jasso or that any supervisor had knowledge of the alleged conduct, let alone that such a person made a 'conscious affirmative choice to ratify the conduct in question'" (citation omitted))*; Gavin v. City of Los Angeles*, 2:05-cv-09001-FMC-SSx, 2007 WL 9706236, at \*11 (C.D. Cal. Aug. 8, 2007) (rejecting ratification theory of *Monell* liability because "the fact that individuals involved in the allegedly unconstitutional acts received promotions is not sufficient evidence to demonstrate that the individuals who promoted them ratified the unconstitutional activity").

Accordingly, Dizon's fourth cause of action, asserting *Monell* liability under a ratification theory, is dismissed without prejudice.

## CONCLUSION

The Court DENIES Defendants' motion to dismiss Dizon's third cause of action and GRANTS the motion as to Dizon's fourth cause of action with leave to amend. Dizon may file an amended complaint within 21 days of this order solely for the purpose of curing the deficiencies identified by this order.[2] If Dizon does not file an amended complaint, the Court will proceed only on the remaining causes of action.

**IT IS SO ORDERED.**

Dated: October 16, 2018



JON S. TIGAR
United States District Judge

---

[2] Dizon requests that she be allowed to conduct discovery before amending her complaint. ECF No. 12 at 20. The Court will not grant this request. "The determination of whether the complaint is legally sufficient under Rule 12(b)(6) is typically made prior to the commencement of discovery. The Court does not believe it is appropriate to allow Plaintiff discovery at this time in order to allow an otherwise deficient claim to proceed." *Harris v. City of Clearlake*, No. 12-0864-YGR, 2013 WL 120965, at *6 (N.D. Cal. Jan. 8, 2013).